**R. Ronald SCHNIER, Petitioner,**

**v.**

**The DISTRICT COURT In and For the CITY AND COUNTY OF DENVER, State of Colorado and the Honorable Sandra I. Rothenberg, one of the Judges thereof, Respondents.**

**No. 84SA123.**

Supreme Court of Colorado, En Banc.

Feb. 4, 1985.

Gengler & Gengler, Ted J. Gengler, Denver, for petitioner.

Cogswell & Wehrle, Thomas J. Kimmell, Eugene S. Burk, Denver, for respondents.

ROVIRA, Justice.

We issued a rule pursuant to C.A.R. 21 to show cause why the respondent district court should not be prohibited from entering a judgment for $153,000 plus interest in a contempt proceeding held a year after final judgment had been entered in a case decreeing specific performance. We now discharge the rule.

### I.

Lexicon Resources Corporation (Lexicon) sued R. Ronald Schnier (petitioner) in the

Denver District Court for specific performance on a contract in which petitioner agreed to buy and Lexicon agreed to sell a number of oil and gas leases. On April 7, 1983, after a bench trial, judgment was entered against the petitioner for specific performance of the contract and he was ordered to pay Lexicon pursuant to the contract.[1] After petitioner's motion for a new trial and/or to alter or amend the judgment was denied, he filed a notice of appeal.[2] No stay of execution was requested by the petitioner or ordered by the court.

In February 1984, Lexicon filed a motion for contempt pursuant to C.R.C.P. 107. Lexicon alleged that although it had complied with all of its obligations under the contract and the court's order, the petitioner had refused to tender the purchase price for the leases, and such refusal constituted disobedience of the court's order which had required the petitioner to pay Lexicon pursuant to the contract. Lexicon requested relief from the petitioner's contempt in the form of monetary sanctions, "including an order requiring [petitioner] ... to pay to [Lexicon] ... the sum of $150,096.45" plus interest and attorney fees.

In March 1984, the parties appeared before the respondent trial court[3] on the motion for contempt. After hearing testimony from the president of Lexicon and the petitioner, the court found that 43 leases were subject to the April 1983 order of specific performance, and that of the 43 leases which had been wrongfully rejected by the petitioner 38 had expired since April 1983.[4] It also found that Lexicon had com-

plied with the April 1983 order, but that the petitioner had not performed and had knowingly and willfully violated the order. The court concluded that since "the res or subject matter of the contract had disappeared," and the responsibility for such loss should fall on the petitioner, judgment should enter against him for $153,000,[5] plus interest and attorney's fees. Further, the petitioner was found in contempt of court, and a stay of execution was denied.

Petitioner claims that the respondent court lacked jurisdiction to consider the motion for contempt and has converted a judgment for specific performance into a money judgment which would cause him irreparable harm if entered against him.[6]

We first consider whether the respondent trial court had jurisdiction to hear Lexicon's motion for contempt. Second, we consider whether after finding the petitioner in contempt, the trial court could impose a fine against the petitioner equivalent to the damages and expense resulting from the contempt.

## II.

■ It is axiomatic that any action taken by a court when it lacked jurisdiction is a nullity. *McLeod v. Provident Mutual Life Insurance Co.*, 186 Colo. 234, 526 P.2d 1318 (1974). Therefore, we are first faced with the question of whether the respondent court was divested of jurisdiction once the petitioner filed his notice of appeal from the April 1983 judgment, leaving the trial court powerless to consider Lexicon's motion for contempt.

---

1. The order also required Lexicon to transfer to petitioner its interest in certain described oil and gas leases, and to make available to petitioner any and all information in its control relating to the leases.

2. The case is now pending in the Colorado Court of Appeals.

3. The respondent trial judge was not the same judge who had tried the case and entered the April 1983 judgment.

4. The primary terms had expired on 31 of the 38 leases since the April 1983 order and neither

delay rentals had been paid nor production obtained on the other seven expired leases.

5. The $153,000 award represents the value of the leases which had expired since the April 1983 order and constitutes the damages suffered by Lexicon as a result of the petitioner's contempt in failing to comply with this order.

6. The petitioner raises a new issue in his reply to show cause: Was a proper citation as required by C.R.C.P. 107 issued? Since this issue was not argued in his petition for writ of prohibition and no specific relief was requested, we decline to address it.

■ Generally, the filing of a notice of appeal divests the trial court of jurisdiction, although this rule is subject to a number of exceptions. A trial court is not divested of jurisdiction to issue further orders in the case relative to the order or judgment appealed from if such further orders are specifically authorized by statute or rule. *Odd Fellows Building & Investment Co. v. City of Englewood*, 667 P.2d 1358 (Colo. 1983) (filing notice of appeal did not divest trial court of jurisdiction to consider stay of judgment); *People v. Dillon*, 655 P.2d 841 (Colo.1982). It is elemental that where a judgment is not stayed by a proper order or bond there is no impediment against proceedings in the trial court for the purpose of executing on the judgment. A pending writ of error or appeal does not automatically stay execution. *See Lay v. District Court*, 171 Colo. 472, 468 P.2d 375 (1970); *England v. Colorado Agency Co.*, 145 Colo. 310, 359 P.2d 1 (1961); *In re Marriage of McCue*, 645 P.2d 854 (Colo. App.1982); *Oman v. Morris*, 28 Colo.App. 124, 471 P.2d 430 (1970). *England* demonstrates that contempt proceedings may be used to enforce a judgment where there has been no supersedeas or stay. There, the parties stipulated that a preliminary injunction should be entered which provided that the defendant, an insurance agent, would not interfere with the business of the plaintiff, an insurance agency, or do any business with its customers. The defendant was later found in contempt for violating the preliminary injunction. Subsequently, the defendant filed a praecipe for writ of error which issued. The writ of error was directed to the order granting the preliminary injunction, but no stay of execution was entered. After the writ of error was issued, the defendant was again found in contempt by the trial court. This court refused to direct the trial court to vacate the second judgment of contempt, holding that where no supersedeas, or other stay of temporary injunction had been issued there is no impediment to the enforcement of the judgment and orders of the trial court. 145 Colo. at 313, 359 P.2d at 2.

■ Turning to the facts of the instant case, Lexicon's motion for contempt was filed for the purpose of enforcing its judgment. Lexicon requested the court to impose sanctions, including an order requiring the petitioner to pay the purchase price for the leases pursuant to the April 1983 judgment. The petitioner had not requested a stay of proceedings nor did the trial court order a stay.[7] Therefore, we conclude that petitioner's filing of the notice of appeal did not divest the trial court of jurisdiction to consider Lexicon's contempt motion where no stay of execution was ordered.

### III.

■ The petitioner also contends that even if the respondent court could consider Lexicon's post-trial motion, the proper motion should have been made under C.R.C.P. 70, and not C.R.C.P. 107. We disagree. C.R.C.P. 70 provides a mechanism for vesting title where a judgment directs a party to do so and that party fails to do so within the time specified.[8] That rule does not

7. During the hearing on Lexicon's contempt motion, the petitioner was asked by his counsel if he had posted bond before appealing the April 1983 judgment. The petitioner testified:

No I have not. It's my understanding that a supersedeas bond is only—it's for a delay of the judgment. I'm prepared right now financially and mentally and in every way else to close on the leases.

8. C.R.C.P. 70 provides:

If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. If real or personal property is within the district, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a convey-

apply here because Lexicon, as vendor, held title to the leases and was at all times willing to vest title in the petitioner in accordance with the April 1983 judgment.

■ We also note that C.R.C.P. 70 specifically provides that a court "may also in proper cases adjudge the [disobedient] party in contempt." Therefore, even if the rule were applicable, it would not preclude the use of contempt proceedings where one party has suffered injury caused by another who has failed to comply with an earlier order for specific performance for the sale of land.

■ We believe that the trial court properly considered Lexicon's motion for contempt. "[D]isobedience or resistance of any lawful writ, process, order, rule, decree, or command" of a court constitutes contempt. C.R.C.P. 107(a). Thus, the trial court was empowered to find that the petitioner's failure to comply with its April 1983 order for specific performance constituted contempt.

## IV.

The final question is whether the trial court, after finding the petitioner in contempt, could impose a fine against him to compensate Lexicon for the damages, costs, and fees it suffered by the contempt. Thus, the narrow issue we decide here is whether the respondent court had the authority to impose this sanction against the petitioner. The remedial purpose and character of the fine establishes that the respondent court's contempt order is properly characterized as civil, not criminal. *People v. Barron,* 677 P.2d 1370, 1372 n. 2 (Colo. 1984) (civil contempt proceedings are remedial and not intended as a deterrent to offenses against the public, whereas criminal contempt is prosecuted to preserve the power and vindicate the dignity of the court by punishing the contemnor).[9]

■ Fines are expressly authorized in civil contempt proceedings by C.R.C.P. 107(d)[10] for two purposes. First, remedial fines[11] may be imposed payable to a person

---

ance executed in due form of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk.

**9.** The distinction made between the remedial or punitive purpose of the contempt order is not always helpful in determining whether the contempt is civil or criminal because C.R.C.P. 107(d), which sets forth the sanctions for civil contempt, provides that the court may impose a fine or imprisonment "to vindicate the dignity of the court," much like criminal contempt proceedings.

**10.** C.R.C.P. 107(d) provides:
The court shall hear the evidence for and against the person charged and it may find him guilty of contempt and by order prescribe the punishment therefor. A fine may be imposed not exceeding the damages suffered by the contempt, plus costs of the contempt proceeding, plus reasonable attorney's fees in connection with the contempt proceeding, payable to the person damaged thereby. If the contempt consists of the failure to perform an act in the power of the person to perform he may be imprisoned until its performance. In addition thereto, to vindicate the dignity of the court, if the citation so states, a fine or imprisonment may be imposed. If any such fine is not paid the court

may order the contemner imprisoned until payment thereof.

**11.** Colorado is among those states which have, by rule or statute, specifically authorized compensatory damages or fines for civil contempt. *E.g., State v. Unique Ideas, Inc.,* 44 N.Y.2d 345, 405 N.Y.S.2d 656, 376 N.E.2d 1301 (1978); *City of Cincinnati v. Cincinnati District Council 51,* 35 Ohio St.2d 197, 299 N.E.2d 686, *cert. denied,* 415 U.S. 994, 94 S.Ct. 1597, 39 L.Ed.2d 892 (1973); *Bradshaw v. Kershaw,* 627 P.2d 528 (Utah 1981); *State ex rel. Lemon v. Coffin,* 52 Wash.2d 896, 332 P.2d 1096 (1958); *Getka v. Lader,* 71 Wis.2d 237, 238 N.W.2d 87 (1976). Other courts have judicially recognized or held that in proper circumstances, a court may award compensatory damages or fines to an aggrieved party for damages sustained as a result of contempt. *E.g., United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Allied Materials Corp. v. Superior Products Co.,* 620 F.2d 224 (10th Cir.1980); *C.R.T., Inc. v. Brown,* 269 Ark. 114, 602 S.W.2d 409 (1980); *Hawaii Public Employment Relations Board v. Hawaii State Teachers Association,* 55 Hawaii 386, 520 P.2d 422 (1974); *Electro-Craft Corp. v. Controlled Motion, Inc.,* 332 N.W.2d 890 (Minn.1983). The few jurisdictions which have disallowed compensatory awards in civil contempt proceedings have done so on the basis that their contempt powers are

damaged by the contempt of another. *Shapiro v. Shapiro,* 115 Colo. 501, 175 P.2d 387 (1946). Second, a punitive fine may be imposed to vindicate the dignity of the court if the citation so states.

Where a fine is ordered payable to a party but is in excess of the actual damages plus costs and attorney's fees suffered by reason of the contempt, a trial court exceeds its jurisdiction under C.R. C.P. 107(d). *See Blank v. District Court,* 190 Colo. 114, 543 P.2d 1255 (1975); *Brown v. Brown,* 183 Colo. 356, 516 P.2d 1129 (1973). However, a fine in any amount is permissible for vindication of the dignity of the court, but must be payable to the court, not the parties. *Brown,* 183 Colo. at 360, 516 P.2d at 1132. Therefore, whether or not a fine is properly imposed under C.R. C.P. 107(d) requires an examination of who receives the fine, the person damaged by the contempt or the court, and the amount of the fine.

Here, the fine imposed on the petitioner was payable to Lexicon, the party injured by the contempt, not the court. Therefore, the trial court had the power to impose a fine not exceeding the damages suffered by the contempt, plus costs and attorney's fees associated with the contempt. Without examining the reasonableness and merits of the fine imposed by the trial court, we conclude that if the fine imposed was based on the damages, costs, and fees associated with the petitioner's contempt then the trial court did not exceed its jurisdiction.

A brief examination of a case in which damages were awarded in a contempt proceeding to a party entitled to specific performance under an earlier decree illustrates how damages, costs, and fees caused by a contempt become incorporated into a remedial fine. *Bradshaw v. Kershaw,* 627 P.2d 528 (Utah 1981). In *Bradshaw,* the failure of a seller of land and water rights to deliver a well permit as required by an earlier court decree for specific performance left the subject land without water for irrigation. The purchaser initiated contempt proceedings, and, after finding the seller in contempt, the trial court determined that the purchaser had suffered damages of $190,500. The Utah Supreme Court affirmed, finding that the trial court was authorized by Utah's contempt statute to enter the award. The statute provided that if an actual loss or injury to a party in an action or special proceeding is caused by contempt, the trial court " 'may order the person proceeded against to pay the party aggrieved a sum of money sufficient to indemnify him and to satisfy his costs and expenses.' " 627 P.2d at 532. Attorney's fees and costs awarded in addition to the $190,500 were also upheld.

The fine authorized by C.R.C.P. 107(d), payable to the person damaged by a contempt, also provides for indemnification, but "not exceeding the damages suffered by the contempt, plus the costs of the contempt proceeding, plus reasonable attorney's fees in connection with the contempt proceeding." Therefore, after finding the petitioner in contempt for his failure to comply with the earlier order for specific performance, the trial court was authorized to impose a fine against him within the limits prescribed by the rule. As stated earlier, the record shows that 38 of the 43 leases subject to the order for specific performance had expired since the order was entered. This record supports the conclusion that Lexicon had been damaged by the contempt. In accordance with that conclusion, the trial court did not abuse its discretion in imposing a fine in addition to attorney's fees and costs.

Accordingly, we discharge the rule.

limited to maintaining the dignity of the court, not compensating injured parties. *E.g., H.J. Heinz Co. v. Superior Court,* 42 Cal.2d 164, 266 P.2d 5 (1954); *Eberle v. Green,* 71 Ill.App.2d 85, 217 N.E.2d 6 (1966); *Dunlavey v. Doggett,* 38 Mont. 204, 99 P. 436 (1909); *Kasparek v. May,* 174 Neb. 732, 119 N.W.2d 512 (1963). *See generally* Annot., 85 A.L.R.3d 395 (1978) (right of injured party to award of compensatory damages or fine in contempt proceedings).